IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                             |   |                    |
|-----------------------------|---|--------------------|
|                             | * |                    |
| UNITED STATES OF AMERICA    |   |                    |
|                             | * |                    |
| v.                          |   | No. GLR-20-408     |
|                             | * |                    |
| WAQAS SHAH                  |   |                    |
|                             | * |                    |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN AID OF SENTENCING**

Comes now the Defendant herein, Waqas Shah, through his undersigned counsel, Michael D. Montemarano, Esq., and Michael D. Montemarano, P.A., and hereby provides this Court with this *Memorandum in Aid of Sentencing*, regarding certain issues relative to sentencing raised in the PSR, previously filed herein, and in support thereof does state as follows:

**Introduction**

Mr. Shah is to be sentenced on March 8, 2021, upon his plea of guilty to the two counts of the Information. The plea agreement sets out, and Mr. Shah agreed to, certain factors which necessarily will impinge upon in the sentencing of this matter. Other considerations remain an issue with regard to sentencing, or are inadequately set out in the PSR, if not veering closely to being contradictory to established law. These are more fully described *infra*, and it is these disputed matters to which this *Memorandum* is addressed. These include, *inter alia*, the following matters.

Mr. Shah takes issue with the functional equivalence, under the USSG, of the felonies originally charged against him and the misdemeanor to which he plead. The computations under the USSG as set forth in the PSR, offer insufficient consideration of the

change in the charges, and in terms of the reasonableness of the sentence computed thereunder, whether or not such computations are indeed accurate.  Mr. Shah specifically does not claim that the computations are erroneous.

Mr. Shah also seeks to bring to the Court's attention those factors set forth in 18 USC § 3553(a), as applied to his unique situation, as will be discussed in further detail, *infra*, and as are required to be taken into account in calculating and imposing an appropriate, just and proportionate sentence.

### The correct guideline determination

Prior to the commencement of the sentencing proceeding on March 8, 2021, Mr. Shah should be placed at CH I, offense level 12, as correctly determined in the PSR, at ¶ 40.  Nonetheless, the defense submits that the computational determination  regarding the sentencing range  in the PSR, at ¶ 78, is, however, excessive and overrepresents his offense, as is discussed, *infra*.  It must be noted in this context that the USSG range for the mere receipt of stolen property, a misdemeanor, is identical under the USSG to that for the original felony offense on which Mr. Shah was charged and went to trial in August, 2019.

As further set out, *infra,* the USSG range is flawed in application to this misdemeanor being entirely indistinguishable from its application to the felonies involving interstate transportation or receipt of stolen property as charged in the indictment against the codefendants.   The defense further submits that there are personal and other considerations relative to the sentencing calculus which this Court should take into consideration in arriving at a just and constitutionally appropriate sentence.  *See generally* 18 USC § 3553.

2

**The guideline sentencing range and recommendation as calculated by USPO
is presumptively unreasonable for this Defendant**

Mr. Shah will make a more complete showing regarding this at sentencing. Mr. Shah will note for now that he has a supportive family and friends, and a stable and particularly extensive employment history.

> It is the responsibility of district courts to develop principled methods for addressing this question and determining how much weight to put in the advisory Guideline range, especially in light of the 3553(a) factors that we must also consider.

*United States v. Gray*, 362 F.Supp.2d 714, 722 (S.D. W.Va. 2005).

The advice of Judge Goodwin in *Gray* is well-taken in this context. The Supreme Court held in *United States v. Booker,* 543 U.S. 220 (2005), that ultimate sentencing discretion must be vested in the trial court, and that 18 USC § 3553 sets out the guidelines for the exercise of this discretion. The decision in *Booker* followed in logical sequence from the Court's prior decisions in *Apprendi v. New Jersey,* 530 U.S. 466, *Ring v. Arizona*, 536 U.S. 584 (2002), and *Blakely v. Washington*, 542 U.S. 296. As one district court immediately observed, the playing field has become entirely different since *Booker*. "The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines." *United States v. Ranum,* 353 F.Supp.2d 984, 985-986 (E.D. Wis. 2005) (thoughtful discussion of § 3553(a) factors which specifically had been precluded from consideration by the terms of the USSG).

This is not to say that federal criminal sentencing suddenly was seen to take place upon a *tabula rasa*. Indeed, in the constitutional exercise of its constitutional authority, Congress has provided for federal courts those bases upon which sentences should be predicated, through the exercise of the courts' discretion, rather than imposing specific requirements upon which sentences

**must** be based, without thought or discretion.  These factors, as set out in § 3553(a)(2), state that a sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care.  Indeed, the USSG are now but one of the factors which the sentencing court must consider under § 3553(a).  *United States v. Ranum,* 353 F. Supp.2d at 985-86.

Since its decision in *United States v. Booker* which clarified the USSG as being merely advisory, the Supreme Court has gone yet further to provide precision as to the discretion which the district courts may and must exercise in imposing sentence.  It has held, in the linked opinions in *Kimbrough v. United States*, 552 U.S. 85, 106-11 (2007), and *Gall v. United States,* 552 U.S. 38, 48-57 (2007),  revolving around the specific question of the relationship of reasonableness and a sentence within the guidelines range, that a sentence within the USSG range is not presumptively reasonable.

Indeed, a presumption of reasonableness does not correlate with such calculations, as it vitiates the clear directive of *Booker* that the Sixth Amendment must guide a sentencing for the protection of the defendant.  In essence, the impermissible presumption by a sentencing court of the validity of the USSG range, *see United States v. Nelson,* 555 U.S. 350, 351-352 (2009)  ("[t]he Guidelines are not only *not mandatory*, they are also not to be *presumed* reasonable") (emphasis in original), will undertake to manufacture a sentence by means absent the adversarial testing required by the Constitution.  *See Blakely v. Washington,* 542 U.S. at 305-08, 311-13; *United States v. Booker*, 543 U.S. at 230-44.

Beyond this plain statement of the effect the Guidelines should have, the Supreme

Court has recognized that, practically speaking, they have an inordinate and disproportionate effect upon sentencing, and the miscalculation of the Guideline range can work an unconstitutional effect upon sentencing even though the Guidelines are, and should be, merely advisory. *See Peugh v. United States*, 569 U.S. 530.   It is no less true that a disproportionate guideline will operate inexorably to impose an unreasonable sentence no less than a miscalculation would.

While *Booker*, 543 U.S. at 245-46, states that the sentencing court should consider the USSG *along with* other considerations, in particular those set out in 18 USC § 3553, the government routinely had used this language to urge sentencing courts to consider those portions of the USSG which have been adjudged unconstitutional.  In urging that the Court's approach differ *only* in no longer treating the USSG as mandatory, the government's posture in essence urges the Court to ignore the plain meaning of *Booker, Kimbrough* and *Gall.*

> Judges are supposed to sentence outside the guideline range when the range is greater than necessary or insufficient to meet the purposes of sentencing. This is especially so in career offender/crack cocaine cases, like the instant one. Variances from the Guidelines are frequent in this group precisely because the career offender and crack cocaine guidelines are far too severe, clearly overbroad, and, in the case of the crack guideline, have a profoundly disparate impact on African American offenders.
>
> In effect, an outside the guideline sentence may not be optional; it may well be essential to prevent both unwarranted disparity and unwarranted uniformity. Under the Guidelines, for example, the supplier of cocaine who does his dirty work through street dealers will have little or no criminal record; he may be treated less severely than individuals to whom he sells for street distribution who necessarily have frequent encounters with the police. Likewise, the courier who carries the drugs from the money source to the drug source, may be treated virtually the same (with minor role adjustments) as the people from whom he is taking direction and who stand to gain millions. As Judge Gleeson noted (in a different context) in *United States v. Ovid,* 2010 WL 3940724 [at *7] (E.D.N.Y.) "the fact that two fraud defendants have similar or even identical *Guidelines ranges* does not necessarily mean they committed similar offenses."

*United States v. Whigham*, 754 F.Supp.2d 239, 252 (D.Mass. 2010) (emphasis in original).  As

5

observed by the same court:

> Similarly situated with respect to the Guideline categories does not necessarily mean similarly situated with respect to the defendant's actual role in the criminal endeavor other real culpability. Guideline categories (like career offender guidelines) are frequently over broad, giving the same "score" to individuals who are not remotely similar and ignoring critical differences between them (their role in the offense, their mens rea) that should bear on punishment.

*Whigham*, 754 F.Supp.2d at 242, *and id.* at 248-49 (noting "a flaw" in the USSG, for the failure to consider other defendants in their calculations); *see also United States v. Garrison,* 560 F.Supp.2d 83, 84-85 (D.Mass. 2008) (criticizing the too-narrow approach by the USSG to the term "similarly situated"). This is all the more true in the context of this crime, where Mr. Shah now has plead guilty to an offense which lacks the active participation required of the indicted offense, and rather can be committed, as it was here, by the passive receipt and willfully blind acceptance of property without questioning its provenance. It is difficult, factually or legally, to parallel the *mens rea* necessary to act with that more limited intention needed to merely receive. But the USSG do exactly that. Such a coarsely drawn analysis cannot begin to describe and differentiate the relative extent of their individual participation, and their particular *culpability* in the overarching criminal conduct. Indeed, were the proceeding on March 8 instead to comprehend a sentencing on the felony charge, 18 USC § 2315, Mr. Shah would be raising a forceful argument specifically regarding his much lesser role in this offense. Such a role reduction cannot be the case in the misdemeanor at issue, but the USSG do not differentiate this.

This is the specific shortcoming of the USSG in this case for there can be no real question but that Mr. Shah received property that was the fruits of illegal activity, while at the same time he had no role or participation in any manner in that illegal activity. It was on this basis which

a plea offer was tendered by the USAO to the misdemeanor, but which reduction leaves no discernible trace in accordance with the dictates of the USSG. This divergence between the other defendants on the indictment and Mr. Shah, in terms of actual participation with them, is all the more troubling when the USSG cannot be understood to distinguish between them.  During this entire time, Mr. Shah was gainfully employed and making a living operating his cell phone store, and not undertaking criminal activity as were Tate and Gibson.

In sum, the USSG focus only on certain, but certainly not all, considerations which are relevant to sentencing.  It is necessary for the sentencing court "to understand all the facts about the defendant's life and the circumstances of this offense, not simply the facts made relevant by the Guidelines." *United States v. Whigham*, 754 F.Supp.2d at 241.

> We canvass all of the many features of the case that bear on the culpability of the defendant. Though some of those features have been considered by the Sentencing Commission and incorporated into the Guidelines calculation, *many are not*. But they are still part of the nature and circumstances of the offense, or part of the history and characteristics of the defendant, and thus may (indeed must) be factored into the sentence by the judge.

*United States v. Ovid,* 2010 WL 3940724 at *6 (E.D.N.Y.) (emphasis supplied).

As the USSG now are no longer are mandatory for the imposition of sentences, judges are free to exercise judicial discretion in crafting appropriate sentences for the particular circumstances involving particular defendants.  Indeed, it is understood that one of the primary failings of the mandatory scheme in the USSG was their failure to permit an adequate individualized consideration of criminal defendants, to the extent of § 5H1 and § 5K2.22 specifically delimiting, if not actually precluding, consideration of and departures regarding certain of those factors which specifically are set out in 18 USC § 3553(a).  This is of especial note and significant contrast when

it is remembered that the consideration of these § 3553(a) factors is required of the sentencing court by statute ("The court, in determining the particular sentence to be imposed, *shall* consider...") (emphasis supplied), while at the same precluded by the USSG.

Furthermore, following from the rationale described in *Spears v. United States*, 555 U.S. 261, 262-267 (2009), this Court in its role as the sentencing court is permitted to disagree with the policy underlying *any part* of the USSG, and such disagreement may inform a departure from the sentence described by their application.   *See also Kimbrough v. United States*, 552 U.S. at 85-110.   Indeed, *Kimbrough* can be understood to support the proposition that "a categorical disagreement with and variance from the Guidelines is not suspect," *Spears,* 555 U.S. at 264, *citing Kimbrough,* 552 U.S. at 109, which is to say that the sentencing court need not determine that a guideline provision works an injustice in a particular case, rather the court may reject a provision categorically and universally, so long as the sentence it imposes is reasonable.   While *Kimbrough* involved a determination made with regard to the crack/cocaine disparity, the logic is equally compelling in other contexts, where the USSG policy is similarly unsupported by empirical evidence, research or analysis.   *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir.2010) (child pornography); *United States v. VandeBrake,* 679 F.3d 1030, 1033-37 (8th Cir.2012) (antitrust); *United States v. Corner,* 598 F.3d 411, 415 (7th Cir. 2010) (en banc) (career offender); *United States v. Cavera,* 550 F.3d 180, 191 (2d Cir.2008) (en banc) (firearms); *United States v. Jones,* 531 F.3d 163, 178-82 (2d Cir.2008) (crack); *United States v. Merced*, 603 F.3d 203, 217-20 (3d Cir.2010) (career offender).

Unfortunately, this shortfall plainly is due to the fact that, in spite of the congressional mandate that the decisions regarding the framing of the USSG be based upon empirical evidence and study, such is not always the case.   The amended crack cocaine guideline is not the sole example of

8

this. *See, e.g., United States v. Whigham*, 754 F.Supp.2d at 248 (critique of career offender guideline as well); *United States v. Newhouse,* 919 F.Supp.2d 955 (N.D. Ia. 2013) (same).   A categorical disagreement with a flawed guideline is not suspect – it is **required**.  *See Whigham*, 754 F.Supp.2d at 252.   The disparity in offense conduct not meliorated by the USSG is as demonstrative of the flaws with the USSG as this Court might desire, and certainly is sufficient to inform an agreement with the defense position at sentencing.

### Mr. Shah's Personal Background and § 3553

In *United States v. Moreland*, 568 F.Supp.2d 674 (S.D.W.V. 2008), the district court rejected the casual "one  size fits all" approach to criminal record analysis undertaken by the Commission in promulgating the guidelines.   The court found grouping all prior narcotics offenses together regardless of amount of drugs, sentence imposed or time passed since the conviction, to be consummately unjust.   Equating Mr. Moreland's two distribution offenses, amounting to a single marijuana cigarette and less than a quarter ounce of crack (6.92 grams), both committed over a decade previously and collectively penalized by less than a year in prison, to those committed by a drug kingpin or violent drug offender using firearms to commit his crimes, constituted unwarranted similarity of treatment. *Id.* at 686-87.   Indeed, this moved beyond the removal of unwarranted disparities, and toward the unreasonable end of removing all disparities.  Furthermore, these offenses "hardly constitute the type and pattern of offenses that would indicate Mr. Moreland has made a career out of drug trafficking."   The court viewed the likely 30 year sentence to "disposal" of the defendant, an individual whom it found to have an excellent chance of turning his life around.

> The career offender guideline provision provides no mechanism for evaluating the relative seriousness of the underlying prior convictions.   Instead of reducing unwarranted sentencing disparities, such a mechanical approach ends up creating

additional disparities because this Guideline instructs courts to substitute an artificial offense level and criminal history in place of each individual's precise characteristics. This substitution ignores the severity and character of the predicate offenses.

*Id.* at 688.

Of course, the sentencing on March 8 will not address decades of potential incarceration, nor does Mr. Shah have any prior criminal record whatsoever. For Mr. Shah, however, with his multiple employments paralleled by his multiple academic endeavors aimed to culminate in a Ph.D., incarceration for nearly a year (the USSG range begins at 10 months) and the attendant enforced separation from his academic pursuits would be no less significant or drastic than if he were facing decade or more. Indeed, Mr. Shah continued with his educational endeavors and obtained his first master's degree while on release. PSR ¶ 62. Mr. Shah's work ethic is a commodity which this Court should value when it determines a sentence.

Regardless of one's view of the foregoing, it cannot but be argued that Mr. Shah has demonstrated significant remorse for his involvement in any criminal activity. He has demonstrated a deep-seated acceptance of responsibility and remorse for his actions by his conduct through his compliance with the directives of his supervising pretrial services officer, Mr. Seth Flor., over a period of release in excess of three years in length.

For this reason, which has been a form of sentence not very different than supervised release, this Court should impose a sentence of time served. Mr. Shah has proven that he can, and easily, integrate himself in society and comport himself with the law

It may be that this Court is disinclined to impose the defense's recommended time-served sentence, and does view some period of incarceration as necessary; the defense nonetheless submits that this should be well below the bottom of the USSG range. Beyond this decrease of the

total amount of time which should be imposed as a sentence for the offense of conviction, the

defense urges this Court to impose any cercarial sentence as a term of house arrest and/or work

release. While this ordinarily might be considered an "act of leniency," the Supreme Court certainly

views this otherwise. Its guidance is that house arrest or work release should be understood to

constitute a very significant imposition upon Mr. Shah's freedom. and has held this specifically in

the context of a probationary disposition as it relates to the reach and application of § 3553(a).

> At the end of both the sentencing hearing and the sentencing memorandum, the District Judge reminded Gall that probation, rather than "an act of leniency," is a "substantial restriction of freedom." In the memorandum, he emphasized:

> "[Gall] will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term."

> Finally, the District Judge explained why he had concluded that the sentence of probation reflected the seriousness of Gall's offense and that no term of imprisonment was necessary:

> "Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life. The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is a danger to society. In fact, the Defendant's post-offense conduct was not motivated by a desire to please the Court or any other governmental agency, but was the pre-indictment product of the Defendant's own desire to lead a better life."

*Gall v. United States,* 552 US at 44-45 (citations omitted). The opinion in *Gall* directly describes

the reach and application of § 3553(a).

.

The defense urges this Court to give serious and particularized consideration to the sentencing considerations under § 3553 which relate to Mr. Shah.  These include:

• ***"the history and characteristics of the defendant;"*** Mr. Shah submits that the lack of a propensity to refined, coupled with a demonstrated and significant propensity to work and further education fairly describes the man who will come before the Court on March 8.

• ***"the nature and circumstances of the offense;"*** This plainly was a not-insignificant offense, except when Mr. Shah's role in it is taken into account.  Mr. Shah had no supervisory role, nor a role in the creation of the robbery scheme undertaken by Tate and Gibson.  Indeed, he had no knowledge of the robberies, and solely was wilfully blind to the provenance of the new phones he purchased from them for his business.  The defense submits that this matter is paradigmatically an instance of conduct which is indeed "aberrant," requiring neither significant planning nor a lengthy duration to a single criminal event.  *See, e.g., United States v. Sims*, 428 F.3d 964-65 (9th Cir. 2005); *see also United States v. Hunts,* 196 F.3d 687, 694 (7th Cir. 1999).  Even so, however, it is neither reasonable nor accurate to suggest Mr. Shah is (or was) innocent of a crime, or even less than guilty of the offense of conviction.  This much is plain from the facts, no less than from his entry of pleas of guilt before this Court; he did not simply say no and walk away from the possible criminal conduct and its promise of money for his family.  This was recognized by the experienced prosecutors and embodied in the offer made to Mr. Shah.

• ***"the seriousness of the offense;"*** It cannot be suggested that this is not a serious offense, and the defense would not put forward such a proposition.  That being said, considered in light of its motivations, and n light of his participation and cooperation, it is plain that Mr. Shah's offense was less serious than that of many others before this Court charged with the very same statutory

violations as encompassed by the indictment, let alone other misdemeanors. This suggests a lesser degree of moral as well as legal culpability than that of his codefendants.

• ***that the sentence provide "just punishment for the offense;"*** A particular criminal defendant merits, in light of due process considerations, a particularized consideration.

• ***that the sentence promote "respect for the law;"[1]*** Likewise. In light of Mr. Shah's lesser role in this offense, his background and his conduct since his arrest, his continued employment and educational efforts, undersigned counsel is hard pressed to understand why the government would argue against the resolution and sentence urged by this *Memorandum* (if it indeed will do so on March 8). While the USAO office policy may generally point toward a sentencing recommendation no lower than the bottom of the USSG range, if that, any "policy" necessarily must contend with outliers, and rare and different circumstances which argue for differentiated and particularized outcomes, and should not be enforced by rote.

• ***"to afford adequate deterrence to criminal conduct;"*** The defense respectfully submits that the simple fact of a federal prosecution has a deterrent effect all its own, and, when taken with the other factors which inform this sentencing, will afford adequate deterrence to similar conduct by others. Mr. Shah will have a criminal conviction, which by itself will serve to mark him for the rest of his life.

• ***"the protection of the public;"*** The crimes in question took place three and one-half years ago. Mr. Shah's conduct since his arrest makes clear that he presents no significant risk to the public, and argues most clearly in favor of the sentence suggested by the defense. A year under

---

[1] and, perforce, the criminal justice system, in its demonstrating a particularized understanding of an individual defendant.

supervised release, as well as the deferred prosecution agreement, hang over Mr. Shah's head, a fact of which he is more than aware.  Concomitant with this, Mr. Shah can continue to be a contributing and taxpaying member of society, if the sentencing leaves him able to continue to teach and to work.

• ***to provide the defendant "needed educational or vocational training, [and] medical care;"*** Mr. Shah desires to continue his education, in which he has persevered during his time on pretrial release.

• ***"the kinds of sentences available;"*** The USSG call for a sentence of incarceration, although this cannot be addressed with specificity pending the resolution of the issues raised previously in this *Memorandum*.  The defense submits that the appropriate sentence would be one time-served, and if not that then of home detention or community confinement, coupled with work release, which would permit supervision of Mr. Shah on the one hand, while permitting him to continue with his employment and at same time permitting him to continue with his education.

• ***"the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct;"***   Mr. Shah, the defense submits, faces under the USSG the likelihood of receiving a sentence for a misdemeanor conviction that is disproportionately high.  Likewise, Mr. Shah's lesser, if not mitigating, role in the overall criminal activity will factor in this analysis.  *See United States v. Hunts*, 196 F.3d at 694.

### Conclusion and Suggested Sentence

The description above, taken together, leads to an adjusted offense level of 12 (base level of 14, less 2 for acceptance of responsibility), criminal history category I (for zero points, *see* PSR ¶ 43), and a sentencing range of 10-16 months.

That being said, the defense would not suggest that Mr. Shah is not responsible for his

offense.  He willfully engaged in the conduct, and is prepared to be punished for it.  But, as *United States v. Booker*,  543 U.S. 220 (2005), has made clear, there can be no justice where it is not tempered with mercy, and mercy readily can be defined as an individualized consideration of the background and factors relative to a particular defendant, which will result in a sentence which is just.

   The defense respectfully submits that a sentence of time served, or a sentence significantly below the USSG range, to be served on house arrest and with work release, represents the lowest possible reasonable sentence, and one which accords with all considerations material to sentencing by this Court.  The described sentence would be appropriate in light of Mr. Shah's personal circumstances and involvement in this matter.  An aggregate sentence of the indicated length can be served on house arrest, as defense counsel is informed by USPO, or by way of community confinement, and can permit Mr. Shah to continue to work and continue with his education, which the defense submits is as important a consideration as any before this Court.  A sentence of house arrest on E.M. or community confinement is entirely equivalent to actual imprisonment.

   In essence, this Court's discretion is bounded only by its good sense predicated upon the unique factual situation presented by an individual defendant.  The previously discussed considerations, *supra*, argue in favor this Court acting to "tailor the sentence in light of other statutory concerns as well," *Booker*, 543 U.S. at 245-46, and to impose a sentence which is reasonable.  *Id.* at 261-63 (discussing review of sentences for "reasonableness"); *see* 18 USC § 3742(e).

Respectfully submitted,

February 22, 2021                              _____/s/_____
                                             MICHAEL D. MONTEMARANO

                                             Law Offices of Michael D. Montemarano, P.A.
                                             3826 Paul Mill Road
                                             Suite 204
                                             Elliot City, Maryland  21042
                                             (410) 992-0067/Fax (443) 663-3002
                                             Counsel of Record/CJA Counsel
                                                 For Defendant Waqas Shah

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on or before this 22nd day of February, 2021, a copy of the

foregoing *Memorandum in Aid of Sentencing* was filed via ECF, and served thereby on Paul Riley,

Esq., Assistant United States Attorney, 36 South Charles Street, Suite 400, Baltimore, MD 21202.

                                             _____/s/_____
                                             MICHAEL D. MONTEMARANO

16